



**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON GRAND JURY 2020**
**APRIL 27, 2021 SESSION**

**UNITED STATES OF AMERICA**

**v.**                                                    CRIMINAL NO. 3:21-cr-0007 1

                                                                     18 U.S.C. § 1343
                                                                     18 U.S.C. § 1956(h)
                                                                     18 U.S.C. § 1341
                                                                     18 U.S.C. § 2315

**ABDUL OSUMANU**
**BANABAS GANIDEKAM**

<u>I N D I C T M E N T</u>

The Grand Jury charges:

<u>Introduction</u>

1.      "Online schemes" targeted persons looking for romantic partners, friendship, and other close personal and business relationships on dating websites and other social media platforms.   The perpetrators of the schemes created profiles using fictitious and fake names, locations, images, and personas, allowing the perpetrators of the schemes to cultivate relationships with prospective victims.  The victims provided money and gifts to the perpetrators of the schemes and were typically asked to continue and conduct transactions on behalf of the perpetrators of the scheme.

2.      JP Morgan Chase, N.A. ("Chase") was a financial institution of the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.

3.      At all relevant times, Chase was also a financial institution, which engaged in, and the activities of which affected, interstate commerce as defined in 31 U.S.C. § 5312(a)(2).

1

4.      "Zelle" was a digital payment network and part of a private financial services company owned by Bank of America, BB&T now "Truist," Capital One, JP Morgan Chase, PNC Bank, U.S. Bank and Wells Fargo.  Zelle allowed an individual to electronically transfer money from his or her bank account to another registered user's bank account, held within the United States, by using a mobile device or the website of a participating banking institution.

<u>The Scheme to Defraud</u>

5.      From at least January 2020 through at least February 2020, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants ABDUL OSUMANU, BANABAS GANIDEKAM and other persons both known and unknown to the Grand Jury knowingly participated in a scheme to commit mail and wire fraud offenses, in violation of 18 U.S.C. §§ 1341 and 1343, respectively.

6.      The purpose of the scheme to defraud was for defendants ABDUL OSUMANU, BANABAS GANIDEKAM, and persons both known and unknown to the Grand Jury, to enrich themselves by falsely cultivating relationships through online scams with the victims and thereby causing the victims to send money to persons working with the defendants and to accounts controlled by defendants.

<u>Manner and Means</u>

7.      It was part of the scheme that defendants ABDUL OSUMANU, BANABAS GANIDEKAM and other persons both known and unknown to the Grand Jury, would and did:

    a.  Target and contact victims via email, text messaging, or online dating websites and social media websites that fraudulently induced the victims into believing the victim was in a romantic relationship, friendship, or business relationship with a person using a false and fraudulent identity created by defendants and their associates of the scheme;

    b.  Refuse to use FaceTime or any other video-chat technology with the victims in order to conceal their true identities;

   c. Induce the victims to send money for a variety of false and fraudulent reasons to persons using fraudulent identities, when, in actuality, the accounts were controlled by defendants;

   d. Direct victims to send payments via wire transfer services, including but not limited to bank wire, Western Union, and MoneyGram, to themselves or other individuals. At times, victims were directed to send payments to shell companies and accounts under defendants' control;

   e. Direct victims to purchase cashier's checks and money orders which were then sent to identified parties and addresses using the United States Postal Service and other common couriers; and

   f. Share the proceeds among themselves and with others through wire transfers, Zelle, and by cashing money orders and cashier's checks.

   8.     Specifically, defendants ABDUL OSUMANU, BANABAS GANIDEKAM, and other persons both known and unknown to the Grand Jury, carried out the scheme to defraud in the following manner:

### Amida Ibrahim and Victim D.D.

   9.     In or around 2017, Amida Ibrahim (hereinafter reference to "Amida" shall mean the false persona created to further the fraud scheme) contacted Victim D.D., of Indiana, online. Amida falsely told Victim D.D. that she was born in Canada but moved to Ghana to attend a culinary school and train to become a chef.

   10.    As part of the scheme to defraud, Amida and Victim D.D. communicated frequently through Google Hangouts. As a result of Amida's frequent contacts with Victim D.D., Victim D.D. developed an emotional connection to and romantic feelings for Amida.

   11.    In furtherance of the scheme to defraud, approximately 8 to 10 months after Amida and Victim D.D. met online, Amida asked Victim D.D. to send her approximately $200 purportedly for Amida's dormitory expenses. Amida induced Victim D.D. to send the $200 through Wal-Mart to another individual to receive on her behalf.

12.     In furtherance of the scheme to defraud, approximately a month after Victim D.D. sent the initial $200, Amida repeatedly told Victim D.D. that she needed money for food and everyday expenses. Victim D.D. would then travel to an Indiana Wal-Mart and send money at Amida's direction and on her behalf to purchase iTunes cards for her.

13.     In furtherance of the scheme to defraud, during the summer of 2018, Amida falsely and fraudulently told Victim D.D. that her father had worked in a gold mine in Ghana and after he died, she inherited $7,500,000 in gold bars.  In order for her to collect her inheritance, Amida told Victim D.D. she needed to pay the Country of Ghana about $750,000 in inheritance taxes. Claiming she lacked the funds to pay the taxes, Amida then fraudulently induced Victim D.D. to send money to pay these taxes.

14.     As part of the scheme to defraud, Amida introduced Victim D.D. to a Dr. Eric Gborm ("Dr. Gborm"), who was supposed to help with the logistics of paying the Ghanaian taxes.

15.     In furtherance of the scheme, Amida then fraudulently induced Victim D.D. to mail checks made out to defendant ABDUL OSUMANU for the purpose of paying the taxes. Amida instructed Victim D.D. to write checks payable to defendant ABDUL OSUMANU because he was a friend who would forward her the money.

16.     In furtherance of the scheme to defraud, on or about September 5, 2018, Victim D.D. wrote a $3,000 check payable to defendant ABDUL OSUMANU and mailed it to an address in Huntington, Cabell County, West Virginia.  Shortly after Victim D.D. mailed this check, Amida informed him that she received the $3,000.

17.     In furtherance of the scheme to defraud, on or about September 21, 2018, Victim wrote a $500 check payable to defendant ABDUL OSUMANU and mailed it an address in

Huntington, Cabell County, West Virginia. Shortly after Victim D.D. mailed the check, Amida informed him that she received the $500.

18.    In furtherance of the scheme to defraud, on or about October 19, 2018, Victim D.D. wrote a $10,000 check payable to defendant ABDUL OSUMANU and mailed it to an address in Huntington, Cabell County, West Virginia.  Shortly after Victim D.D. mailed the check, Amida informed him that she received the $10,000.

19.    In furtherance of the scheme to defraud, on or about November 19, 2018, Victim D.D. wrote a $5,700 check payable to defendant ABDUL OSUMANU and mailed it to an address in Huntington, Cabell County, West Virginia.  Shortly, after Victim D.D. mailed the check, Amida informed him that she received the $5,700.

20.    As part of the scheme to defraud, in or around April 2019, Amida told Victim D.D. that Dr. Gborm helped her pay the remaining inheritance taxes on the gold.  Amida and Victim D.D. discussed plans for Amida to fly to Indianapolis, Indiana and meet Victim D.D.  Amida falsely told Victim D.D. that she would fly through Turkey bringing several of the gold bars with her because the price of gold was higher in the United States than in Ghana.

21.    In furtherance of the scheme, Amida then falsely told Victim D.D. that she had been detained by immigration officials in Turkey after they discovered the gold bars in her possession

22.    In or around July 2019, Victim D.D. stopped communicating with Amida and Dr. Gborm.

**Jack London and Victim L.K.**

23.    In or around January 2020, defendants ABDUL OSUMANU and BANABAS GANIDEKAM, together with other persons known and unknown to the Grand Jury, through an individual purporting to be Jack London (hereinafter reference to "Jack" shall mean the false

persona created to further the fraud scheme) contacted Victim L.K. online.  Victim L.K. lived in California.  Jack falsely told Victim L.K. that he lived in California and was a manager for Kane's Investment Funds Management Portfolio located in Los Angeles.

24.     As part of the scheme to defraud, Jack and Victim L.K. communicated frequently online through email and text messages.

25.     In furtherance of the scheme to defraud, as a result of Jack's frequent communications, Victim L.K. developed romantic feelings for Jack.  After starting what Victim L.K. believed was a virtual relationship with him, Jack told Victim L.K. that he had to travel to the United Kingdom for business and upon arrival contacted Victim L.K. and told her that he had discovered an investment opportunity where he and Victim L.K. could earn a $1,800,000 profit.

26.     In furtherance of the scheme to defraud, Jack then falsely told Victim L.K. that the investment required an upfront fee payment of $46,000.

27.     In furtherance of the scheme to defraud, Jack induced Victim L.K. to send the $46,000 by falsely advising Victim L.K. that he was unable to access his bank accounts in the United states to pay the fees.

28.     In furtherance of the scheme to defraud, Jack continued to induce Victim L.K. to send more funds after the initial request for the $46,000 by falsely claiming that the up-front fees had continued to increase.

29.     In furtherance of the scheme to defraud, Jack then induced Victim L.K. to transfer funds purportedly for the initial investment fees by depositing cashier's checks directly into defendant BANABAS GANIDEKAM's Chase bank account. Defendant BANABAS GANIDEKAM was listed as the payee on these cashier's checks.

30.     As part of the scheme to defraud, after defendant BANABAS GANIDEKAM received Victim L.K.'s cashier's checks into his Chase account, he then forwarded a portion of the proceeds to defendant ABDUL OSUMANU.

**Counts One and Two**
**(Mail Fraud)**

31.     On or about the dates specified below for each count, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, having devised and intended to devise the above-described scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, defendant ABDUL OSUMANU knowingly caused to be placed in an authorized depository for mail, the mail matters listed below, made payable to defendant ABDUL OSUMANU, and delivered by the United States Postal Service to his address in Huntington, Cabell County, West Virginia, each transmission constituting a separate count.

| COUNT | DEFENDANT | DATE | INTERSATE MAILING | FROM | TO |
|-------|-----------|------|-------------------|------|-----|
| 1 | ABDUL OSUMANU | 9/5/18 | Mailing of a $3,000 check payable to defendant ABDUL OSUMANU | Indiana | Huntington, WV |
| 2 | ABDUL OSUMANU | 11/19/18 | Mailing of a $5,700 check payable to defendant ABDUL OSUMANU | Indiana | Huntington, WV |

All in violation of Title 18, United States Code, Section 1341.

**Counts Three and Four**
**(Wire Fraud)**

32.     Paragraphs 1 through 30 are incorporated herein.

33.     On or about the following dates at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants ABDUL OSUMANU and BANABAS GANIDEKAM and other persons both known and unknown to the Grand Jury, having devised and intending to devise, and participated in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representation and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DEFENDANT | DATE | INTERSATE TRANSMISSION | FROM | TO |
|---|---|---|---|---|---|
| 3 | BANABAS GANIDEKAM, ABDUL OSUMANU | 1/29/2020 | Wire transfer of $500 | Ohio | Huntington, WV |
| 4 | BANABAS GANIDEKAM, ABDUL OSUMANU | 1/30/2020 | Wire transfer of $500 | Ohio | Huntington, WV |

All in violation of 18 U.S.C. § 1343.

## Count Five
### (Money Laundering Conspiracy)

34.     Paragraphs 1 –30 are incorporated by reference herein.

35.     From in or around January 2020 through at least February 2020, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants ABDUL OSUMANU and BANABAS GANIDEKAM, together with other persons both known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transactions would represent the proceeds of some form of unlawful activities, namely proceeds of wire fraud, in violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344, and the transactions in fact would involve the proceeds of specified unlawful activities, knowing that such financial transactions were designed in whole and in part (i) with the intent to promote the carrying on of a specified unlawful activity and (ii) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## Count Six
### (Receipt of Stolen Money)

36.     Paragraphs 1-30 are incorporated by reference herein.

37.     From at least September 5, 2018 through at least November 19, 2018, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant ABDUL OSUMANU received, possessed, concealed, stored, bartered, sold and disposed of goods, wares, merchandise, securities, and money of the value of $5,000 and more, which had crossed a state boundary after being stolen unlawfully converted, and taken to wit defendant ABDUL OSUMANU received proceeds of fraud schemes that he knew had been stolen and which were transferred from bank accounts and money transfer locations located outside of West Virginia to bank accounts and addresses in Huntington, Cabell County, West Virginia and elsewhere.

All in violation of Title 18, United States Code, Section 2315.

## NOTICE OF FORFEITURE

1.      The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

2.      Notice is hereby given of 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Section 981 and/or 2461(c):

   a.      all property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

   b.      all property involved in such violations or traceable to property involved in such violations; and

   c.      if, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above:

a.      A forfeiture money judgment in the amount of at least $24,882.00 as to defendant ABDUL OSUMANU, such amount constituting the proceeds of the violations set forth in this Indictment.

b.   A forfeiture money judgment in the amount of at least $189,404.43 as to defendant

BANABAS GANIDEKAM, such amount constating the proceeds of the violations

set forth in this Indictment.

LISA G. JOHNSTON
Acting United States Attorney

By:

KATHLEEN ROBESON
Assistant United States Attorney

R. GREGORY MCVEY
Assistant United States Attorney